IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | |
|---|---|
| BONNIE JONES, on behalf of herself and all others similarly situated,<br><br>       Plaintiffs,<br><br>v.<br><br>CHICAGO BRIDGE & IRON COMPANY (DELAWARE),<br><br>       Defendant. | CIVIL ACTION<br><br>NO. 3:17-cv-00424-RJC-DSC |

**MEMORANDUM IN SUPPORT OF JOINT MOTION
FOR PRELIMINARY APPROVAL OF RULE 23 CLASS ACTION
AND FLSA COLLECTIVE ACTION SETTLEMENT**

  Plaintiff Bonnie Jones ("Plaintiff") and Defendant Chicago Bridge & Iron Company (Delaware) ("CB&I" or "Defendant") hereby file this joint brief in support of their Joint Motion for Preliminary Approval of Rule 23 Class Action and FLSA Collective Action Settlement ("Joint Motion") and show unto the Court as follows:

**I.  INTRODUCTION**

  Plaintiff alleges that Defendant violated federal and state law by failing to properly pay overtime to its current and former hourly nonexempt employees at the Charlotte, North Carolina and Canton, Massachusetts locations in the Power Division who worked an allegedly unlawful "9/80" pay plan, (also referred to as an "A-B Schedule"), in violation of the Fair Labor Standards Act ("FLSA") 29 U.S.C. §§ 201, et seq., the North Carolina Wage and Hour Act. ("NCWHA"), N.C. Gen. Stat. § 95-25.1, et seq., the Massachusetts Payment of Wages Act, G.L. c. 149, § 148 et seq. ("MPWA"), and the Massachusetts Minimum Fair Wage Law, G.L. c. 151 et seq.

("MMFWL") Defendant denies Plaintiff's allegations and claims and has affirmatively asserted that the 9/80 pay plan was fully compliant with governing law. The parties have reached a settlement on behalf of the following Settlement Class:

> Non-exempt employees working a "9/80 plan" in Defendant's Power Division for the 2 years preceding the filing of the Complaint (July 18, 2015 through July 18, 2017) who were located in Charlotte, North Carolina and Canton, Massachusetts.

As explained below, the Class Settlement meets the standards for approving both a collective action settlement under the FLSA and for granting preliminary approval of a class action settlement under Rule 23 of the Federal Rules of Civil Procedure. The settlement is memorialized in the Class Action Settlement Agreement, attached as Exhibit 1 ("Settlement Agreement"). The Declaration of Plaintiff's Counsel ("Gibbons Decl.") in support of the parties' Joint Motion is attached as Exhibit 2. The proposed Class Action Settlement Notice ("Notice") is attached as Exhibit 3. The parties request that the Court approve the FLSA settlement, preliminary approve the Rule 23 settlement, and authorize the Notice to be sent to the class.

## II. PLAINTIFF'S CLAIMS

Plaintiff Bonnie Jones alleges she was employed by Chicago Bridge and Iron Company (Delaware) or an affiliate, including Stone & Webster Services, LLC ("Stone & Webster"). On or about December 31, 2015, CB&I sold Stone & Webster to Westinghouse. For purposes of the instant lawsuit, Plaintiff asserts that CB&I was her employer as defined by the FLSA, up to and including December 31, 2015, an allegation that Defendant denies. Plaintiff does not allege that CB&I is liable for any FLSA/NCWHA/MPWA/MMFWL violations that may have been allegedly committed by Stone & Webster or Westinghouse subsequent to December 31, 2015.

During the relevant time period, approximately 259 CB&I non-exempt employees in the Power Division worked what Defendant referred to as the "A-B Schedule." Under the "A-B

Schedule," employees worked four 9-hour days (Monday through Thursday), followed by an 8-hour workday at the end of the first workweek (Friday) that is split into two, 4-hour portions. The employees then worked four more 9-hour days in the second week (Monday through Thursday) with a day off on the fifth workday (Friday). Defendant's A-B Schedule is commonly referred to as a "9/80 Schedule." If the 9/80 work schedule is set up and administered correctly by the employer, workers will work two 40-hour work weeks during each two-week pay period and the employer will not owe overtime (assuming no additional hours are worked).

The key is that the employees' workweek must begin/end during the midpoint of the 8-hour workday (in this case, Friday), causing the first four hours worked that day to fall into one workweek and the remaining four hours worked that day to fall into the next work week. If not administered in this manner, the 9/80 schedule could result in overtime every other week. Plaintiff alleges that Defendant established a Monday to Sunday workweek and that employees were not paid for the 4 hours of alleged overtime worked every other week under Defendant's A-B Schedule. Defendant, however, denies that its A-B Schedule was based on a Monday to Sunday workweek, contending its A-B Schedule was properly administered on a Friday (p.m.) to Friday (a.m.) workweek, such that no overtime was worked under this schedule. Wage & Hour Division, U.S. Dep't of Labor Op. Ltr. (January 16, 2009).

This legal and factual dispute determines liability in this case, the resolution of which would require trial if the parties were unable to settle the matter and were unsuccessful in disposing of the case through dispositive motion practice. Defendant also asserts that, even if liable (which it denies), it paid overtime to employees in certain 36-hour weeks to which it would be entitled to offset any overtime owed and that employees would not be entitled to overtime in workweeks

3

where employees took vacation, sick leave, holiday, or other time off work that reduced their actual hours worked below 40 hours.

### III. PROCEDURAL BACKGROUND AND SETTLEMENT NEGOTIATIONS

Plaintiff filed this case on July 18, 2017 on behalf of herself and all others similarly situated asserting a collective action for violation of the FLSA and a Rule 23 class action alleging claims for violation of the NCWHA. (Dkt. #1.) This lawsuit seeks to recover unpaid overtime compensation and statutory penalties for Plaintiff and her co-workers. (*Id.*) Defendant filed its Answer on October 23, 2017. (Dkt. #8.) On November 14, 2017, the parties filed a joint motion to stay the proceedings to give the parties the opportunity to exchange information and explore settlement. (Dkt. #13.) The parties requested, and the Court granted, additional stays in this action, which the parties put to good use. (*See* Dkt. ##15, 18.)

Between November 2017 and September 2018, the parties exchanged information and negotiated the settlement in this case, which was ultimately reached at mediation before Hon. Judge Carl Horn, III (Ret.) on September 21, 2018. The attorneys who negotiated the settlement are experienced wage and hour litigators who zealously represented their clients' respective interests. (Gibbons Decl. ¶¶1-10); https://ogletree.com/people/benjamin-r-holland, https://ogletree.com/people/elizabeth-r-gift (Defendant's counsel's web profiles).

To facilitate the negotiations, the parties exchanged information, including class, payroll, and compensation data. (*Id.* at ¶10.) During the negotiations, the parties evaluated Defendant's policies and procedures regarding compensation, scheduling, and time reporting; job responsibilities and duties; and payroll data. (*Id.*) Negotiations were extensive and both sides ardently advocated their interests. After these negotiations, the parties reached an agreement. (*Id.*)

## IV. SUMMARY OF THE PROPOSED SETTLEMENT

The parties have executed a Settlement Agreement that allows members of the Settlement Class to participate in a settlement of wage and hour claims asserted in the action. The Settlement Class is defined as "Non-exempt employees working a "9/80 plan" in Defendant's Power Division for the 2 years preceding the filing of the Complaint (July 18, 2015 through July 18, 2017) who were located in Charlotte, North Carolina and Canton, Massachusetts." (Ex. 1 at ¶1, p.4.) There are 259 people in the Settlement Class. The total amount of the settlement is $275,000.00 ("Total Settlement Amount"). (*Id.* at ¶4.) Of this amount, the maximum of $174,833.33 will be paid to the Settlement Class, including a $3,500 incentive payment to Plaintiff Bonnie Jones in recognition for her efforts in filing this case and fighting for the rights of the Class Members. (*Id.*) One third of the Total Settlement Amount, $91,666.67, will be sought by Plaintiffs' Counsel as attorneys' fees and up to $5,000 in expenses and court costs, will be sought from the Total Settlement Amount. (*Id.*) Plaintiffs' Counsel will be handling the responsibilities/duties of the Settlement Administrator. (*Id.*)

Within seven (7) days of the Court's Order preliminarily approving the Settlement Agreement, Defendant will provide the Settlement Administrator with the information needed to facilitate notice of the settlement and calculate the allocation of the Settlement proceeds to all potential Settlement Class Members. (*Id.* at ¶7.) Settlement Class Members will be sent the Notice by first-class mail explaining the terms of the settlement, their rights under the settlement, method for calculating his/her portion of the Total Settlement Amount and the amount he/she is expected to receive under this method, and the procedure for opting-out of, or objecting to, the Settlement. The Settlement Class Members will have forty-five (45) days to opt-out of, or object to, the settlement. (*Id.* at ¶¶ 9-10.)

Except for the named Plaintiff, Bonnie Jones, who agrees to provide a general release in exchange for receipt of an incentive award, the release given by other Settlement Class Members is limited to wage and hour claims under the FLSA and the NCWHA, the MPWA, and the MMFWL, as applicable, as set forth in the Agreement. (*Id.* at ¶¶5, 13.) Settlement Class Members who properly and timely opt-out will not release any claims.

Each Settlement Class Member for whom Defendant's records show worked an "A-B Schedule" in the data provided by Defendant to Plaintiff in this matter (a two-year period), and who do not opt-out of the Settlement ("Participating Class Member"), will receive a pro rata portion of the Net Settlement Amount as follows:

   i.  Each Participating Class Member shall be eligible to receive a pro rata portion of the Net Settlement Amount based on the number of weeks that the Participating Class Member worked during the Recovery Period, which is then divided in half. This represents the number of weeks that the Participating Class Member allegedly worked overtime under the A-B Schedule ("Overtime Weeks"). The Participating Class Member shall receive one settlement share for each Overtime Week worked during the Recovery Period.

   ii. The total number of settlement shares for all Participating Class Members will be added together and the resulting sum will be divided into the Net Settlement Amount to reach a per share dollar figure. That figure will then be multiplied by each Participating Class Member's number of settlement shares to determine the Participating Class Member's Settlement Award.

(Ex. 1 at ¶8.)

If the Settlement is finally approved and does not terminate for any of the reasons set forth in the Settlement Agreement, those who do not opt out of the Settlement will be sent a check for the amount of their Settlement Award and releases their NCWHA, MPWA, and MMFWL claims as applicable. (*Id.* at ¶10, 12.) Any individual who cashes his or her check will be deemed to have opted-in to this lawsuit for FLSA purposes and releases his/her FLSA claims. (*Id.* at 5.)

6

Case 3:17-cv-00424-RJC-DSC   Document 22   Filed 03/24/19   Page 6 of 18

## V. PRELIMINARY APPROVAL OF THE SETTLEMENT

For settlement purposes only, the parties seek certification of a class under Fed. R. Civ. P. 23 and under the collective action procedure of the FLSA. The standards for approval are similar. To approve an FLSA settlement, the Court should consider whether it fairly and reasonably resolves a *bona fide* dispute. *Latham v. Branch Banking and Trust Co.*, No. 1:12–cv–00007, 2014 WL 464236 at *1 (M.D.N.C. Jan. 14, 2014).

To preliminarily approve a Rule 23 settlement, the Court should consider whether the proposed settlement is "fair, reasonable and adequate." *Beaulieu v. EQ Indus. Servs., Inc.*, No. 5:06–CV–00400–BR, 2009 WL 2208131, at *23 (E.D.N.C. July 22, 2009). The Fourth Circuit has bifurcated the analysis into considerations of fairness, which focuses on whether the proposed settlement was negotiated at arm's length, and adequacy, which focuses on whether the consideration provided is sufficient. *Id.*

Courts typically follow a two-step process when reviewing a proposed class settlement. First, the Court determines whether the proposed settlement is within the possible range of approval – whether or not there is probable cause to give notice of the proposed settlement to the class. *Id.* Second, the Court conducts a fairness hearing after preliminary approval is granted and class notice is provided. *Id.* In this case, the parties jointly request that the Court grant preliminary approval of the Rule 23 Settlement and of the FLSA Settlement and set a fairness hearing.

### a. Initial Presumption of Fairness

Although the Fourth Circuit has not directly addressed the relevant factors the Court should consider when determining whether a FLSA collective action settlement is fair and reasonable, district courts generally consider the fairness factors under Fed. R. Civ. P. Rule 23(e). *Latham*, 2014 WL 464236, at *1.

The law favors settlement, particularly in class actions such as this where substantial resources can be conserved by avoiding the time, cost, and rigor of prolonged litigation. *See, e.g., Int'l Union, United Auto, Aerospace & Agr. Implement Workers of Am. v. Gen. Motors Corp.*, 497 F.3d 615, 632 (6th Cir. 2007) (federal policy favors settlement of class actions); *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1354 (11th Cir. 1982) (recognizing policy encouraging settlement of FLSA litigation).

Courts adhere to "an initial presumption of fairness when a proposed class settlement, which was negotiated at arm's length by counsel for the class, is presented for court approval." Newberg on Class Actions, § 11.41. After the parties' arm's length negotiations, "it is not for the Court to substitute its judgment as to a proper settlement for that of such competent counsel." *In re Austrian & German Bank Holocaust Litigation*, 80 F. Supp. 2d 164, 173-74 (S.D.N.Y. 2000) (citation omitted); *see also Grier v. Chase Manhattan Automotive Fin. Co.*, No. CIV. A. 99–180, 2000 WL 175126, at *5 (E.D. Pa. Feb. 16, 2000) ("An initial presumption of fairness attaches to a class settlement reached in arm's length negotiations between experienced and capable counsel.")

    b.    <u>**Analysis of the Applicable Factors Favors the Settlement**</u>

        i.  **The Settlement was achieved in an adversarial context**

The Settlement was negotiated at arm's length by experienced counsel concerning *bona fide* disputes between their clients with respect to liability and amounts due. (Gibbons Decl. ¶11.) This case represented numerous contested factual issues, whether certain legal defenses provided Defendant with a complete or partial defense to liability, and whether class or collective action certification would be proper. (*Id.*)

8

Case 3:17-cv-00424-RJC-DSC   Document 22   Filed 03/24/19   Page 8 of 18

### ii. Class Counsel

The experience of Class Counsel in litigating and negotiating complex wage and hour disputes likewise strongly favors approving the Settlement. "A court is 'entitled to give consideration to the opinion of competent counsel that the Settlement is fair, reasonable and adequate.'" *In re Red Hat, Inc. Securities Litigation*, No. 5:04–CV–473–BR, 2010 WL 2710517 at *3 (E.D.N.C. June 11, 2010) (quotation omitted). When parties assert that they acted independently and negotiated without collusion to develop a proposed settlement, as is the case here, and being no evidence to the contrary, the Court can be satisfied that negotiations were conducted such that each side actively advocated its own position. *Id.* at *2. The putative class had the benefit of representation by law firms that are highly specialized in complex wage and hour litigation, who are familiar with the facts and law in the case, and who collectively have negotiated dozens of similar class and collective action settlements. (Gibbons Decl. ¶¶ 1-9.) In Class Counsel's view, the Settlement provides substantial benefits to the Class Members, particularly when considering the attendant expense, risks, difficulties, delays and uncertainties of litigation, trial, and post-trial proceedings. (*Id.*) Likewise, Defendant was represented by experienced counsel who routinely handle matters under the FLSA and state wage and hour law, as well as work on class and collective litigation.

### iii. The Settlement reflects a reasonable compromise of disputed issues

After investigating the facts and law, and after an exchange of information from Defendant to Plaintiff, the parties concluded that they had sufficient information concerning Plaintiffs' claims and Defendant's defenses from which to discuss settlement of this case. As a result, the parties have ample evidence to make an informed assessment of the merits of their positions. Based on their knowledge of the case and applicable law, as well as their experience in other overtime cases,

Plaintiff's Counsel believes the Settlement is fair, reasonable, and adequate. Although the Court is not bound by Counsels' opinion, their opinion is nonetheless entitled to great weight. *See, e.g.*, *Gribble v. Cool Transports, Inc.*, No. CV 06-04863 GAF, 2008 WL 5281665, *9 (C.D. Cal. December 15, 2008) ("Great weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts").

### iv. The Settlement is fair

Most importantly, the settlement puts money in the hands of Class Members who participate in the settlement and cash the checks sent to them. The settlement also provides the Class with a substantial portion of the relief sought in the Complaint, without the delay and expense of trial, and potentially, post-trial proceedings. Although the maximum possible award at trial may be larger than the settlement amount, the inquiry as to whether a settlement is reasonable examines the benefits of the settlement in light of risks of establishing liability and damages. *See, e.g.*, *Erie Cty. Retirees Ass'n v. County of Erie, Pennsylvania*, 192 F. Supp. 2d 369, 375-76 (W.D. Pa. 2002). Preliminary approval under Rule 23 is not an ultimate determination of whether the settlement is fair, reasonable, and adequate. Rather, at this stage the Court must merely determine "whether there is any reason to notify the Class Members of the proposed settlement and to proceed with a fairness hearing." *Gautreaux v. Pierce*, 690 F.2d 616, 621 n.3 (7th Cir. 1982). This necessarily involves a preliminary determination of the settlement's fairness, reasonableness and adequacy. *See* Manual for Complex Litigation, § 21.632. If the Court finds the Settlement "within the range of possible approval," it should order that the Class be notified of the settlement and formal fairness hearing. *Id.* at § 40.42.

The settlement is favorable and provides reasonable consideration for the claims, bringing compensation to Class Members now, not years from now, and provides certainty about the

10

Case 3:17-cv-00424-RJC-DSC   Document 22   Filed 03/24/19   Page 10 of 18

outcome. It is "proper to take the bird in the hand instead of the prospective flock in the bush." *UAW v. Gen. Motors Corp.*, No. 05-CV-73991-DT, 2006 WL 891151, *18 (E.D. Mich. March 31, 2006).

## VI. THE CLASS MEMBERS ARE SIMILARLY SITUATED FOR THE FLSA SETTLEMENT

In this case, Plaintiff pled statutory overtime claims under the FLSA. Under the FLSA, employees are entitled to bring an action for unpaid wages on behalf of themselves and other similarly situated employees. 29 U.S.C. § 216(b). A class may be certified under the FLSA if the named plaintiff's claims are based on a uniform policy or practice of compensation. *Harris v. Smithfield Packing Co., Inc.*, No. 4:09–CV–41–H(1), 2011 WL 4443024, at*4 (E.D.N.C. Sept. 23, 2011).

For purposes of this Joint Motion and settlement only, the parties agree that the Class Members are similarly situated.[1]

## VII. THE PROPOSED SETTLEMENT CLASS SATISFIES FED. R. CIV. P. 23

When granting preliminary approval of a Rule 23 settlement, the Court should determine whether the proposed class is a proper class for settlement purposes. *Amchem v. Windsor*, 521 U.S 591, 620 (1997). In certifying a settlement class, however, the Court is not required to determine whether the action would be manageable if tried, "for the proposal is that there be no trial." *Id.*; *see* also Fed. R. Civ. P. 23(b)(3)(D). Here, the Settlement Class meets the requirements of Rule 23(a) and (b)(3).

---

[1] If this settlement is not approved, per the terms of the settlement agreement, Defendant reserves the right to challenge that Class Members are "similarly situated." Likewise, Defendant reserves the right to challenge the elements of FRCP 23 if the settlement is not finally approved.

Provisional class certification is appropriate at the preliminary approval stage where, as is the case here, the proposed class has not previously been certified, and the record supports the propriety of class certification. Newberg on Class Actions, § 11.22. The practical purpose of provisional class certification is to facilitate dissemination of notice to the Settlement Class of the terms of the proposed Settlement and the date and time of the final-approval hearing. *Id.* at § 11.27. The requirements of Rule 23 are met:

### a. Rule 23(a)(1) – Numerosity

The numerosity requirement is met if the proposed class is so large that joinder of all Class Members would be impracticable. *See, e.g.*, *Beaulieu*, 2009 WL 2208131, at *11. While there is no set formula, the Fourth Circuit has found numerosity with a proposed class of 46 to 50 class members. *Hosley v. Armour & Co.*, 743 F.2d 199, 217 (4th Cir. 1984). During the class period, Defendant employed approximately 259 employees who worked the A-B Schedule at the Charlotte, North Carolina and Canton, Massachusetts locations. Thus, numerosity is satisfied.

### b. Rule 23(a)(2) – Commonality

Commonality is met if there are questions of fact and law that are common to the class. Fed. R. Civ. P. 23(a)(2); *Beaulieu*, 2009 WL 2208131, at *11. Here, the questions of law and fact presented in this case are common to all Class Members – all employees comprising the Class allege that they were subject to the same 9/80 pay practice that forms the basis of Plaintiff's claims, which resulted in allegedly similar harm to the Class that Plaintiff seeks to redress through her action. (Dkt. #1 at ¶¶1-6; 24-26; 31-33.) In essence, Plaintiff alleges that she, and the Class Members, were not paid overtime for all hours worked in excess of 40 during the first week of the two-week A-B Schedule resulting in overtime violations under the FLSA and violations of state law. (*Id.*)

### c. Rule 23(a)(3) – Typicality

12

Rule 23 requires that "the claims . . . of the representative parties are typical of the claims . . . of the class." Fed. R. Civ. P. 23(a)(3). Typicality does not require that the claims be identical; the named Plaintiff's claims must arise from the same legal theories as the claims of the unnamed Class Members. *Beaulieu*, 2009 WL 2208131, at *13. The named Plaintiff's claims must arise from the same event, practice or course of conduct and be based on the same legal theories as the claims of the unnamed Class Members. *Id.* Like all other Class Members, Plaintiff was an hourly employee in the Power Division for Defendant during the class period. (Dkt. #1 at ¶24, 32.) She was subject to the same alleged unlawful pay practice as the other Class Members. (*Id.* at ¶¶1-6; 24-26; 31-33.) The typicality requirement is met.

### d. Rule 23(a)(4) – Adequacy

Rule 23 requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). To resolve this requirement, courts consider whether class counsel are qualified, experienced, and generally able to conduct the proposed litigation and whether the representative's claims are aligned with the absent class members to ensure fair and adequate representation. *Beaulieu*, 2009 WL 2208131, at **15, 17.

The adequacy requirement is satisfied. Plaintiff and the absent Class Members have the alleged same claims and resulting injury arising from the same alleged unlawful pay practices. Plaintiff's interests are in harmony with those of the Class Members. Plaintiff has also retained Counsel who have extensive experience in prosecuting class actions and complex cases, including wage and hour cases. (Gibbons Decl. at ¶¶1-10.)

### e. Rule 23(b)(3) – Predominance and Superiority

Finally, Plaintiffs contend that the proposed Class meets the requirements of Rule 23(b)(3). To certify a class, the Court must find that common questions predominate over any questions affecting only individual members and class resolution is superior to other available methods for

the fair adjudication of the controversy. Fed. R. Civ. P. 23(b)(3). Predominance is met when most of Plaintiff's evidence is common to each member of the class. *Beaulieu*, 2009 WL 2208131, at *20 (citing *In re Polyester Staple Antitrust Litig.*, No. 3:03CV1516, 2007 WL 2111380, at *27 (W.D.N.C. July 19, 2007)). Here, questions of law and fact are common to the class – whether Defendant's pay practices in association with a 9/80 schedule violated state wage and hour law (i.e., the NCWHA or the MWPA and the MMFWL as applicable) – predominate over any individual questions. The evidence required to establish Plaintiff's claims is common to the Class as well.

Plaintiff also maintains that a class action is superior to other methods for the fair and efficient adjudication of this controversy. Class Members are not likely to have an interest in prosecuting individual cases against Defendant given the relatively low amount of potential damages at stake on an individual basis and the offsets Defendant contends would apply. Additionally, concerns of efficiency and economy favor litigating the issues in one action before this Court rather than requiring individuals to file numerous lawsuits.

## VIII. CLASS NOTICE

Under Rule 23(c)(2), courts "shall direct to the members of the class the best notice practicable under the circumstances, including individual notice to all Class Members who can be identified through reasonable effort." The notice must "concisely and clearly state in plain, easily understood language" the nature of the action; the definition of the class certified; the class claims, issues and defenses; that the class member may appear through counsel if the class member wishes; that the court will exclude class members who request exclusion and the process for doing so; and the binding effect of a class judgment on the class members. Fed. R. Civ. P. 23(c)(2). While Rule 23 does not spell out the required contents of the settlement notice, it must fairly appraise the

prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings. *Beaulieu*, 2009 WL 2208131, at *28.

The proposed Class Notice is attached hereto as Exhibit 3. It satisfies the notice requirements by explaining in clear terms, among other things: (1) the nature of the settlement and the claims resolved and released; (2) the method for allocating the remainder of the Settlement Award to the participating Class Members; (3) the requirement that each Class Member op-out if they do not wish to participate in the settlement and the procedure/deadlines for opting-out of the settlement; (4) the opportunity to object to the settlement and the procedure/deadlines to do so; (5) the disclosure of the $3,500 Incentive Payment to Plaintiff in return for filing and prosecuting her claims on behalf of herself and the Class; and (6) the disclosure to Class Members that Plaintiff's Counsel will apply to the Court for an award of fees and costs associated with this action, and the amounts sought.

## IX. THE NAMED PLAINTIFF IS ENTITLED TO THE INCENTIVE PAYMENT

Under the terms of the Settlement, Plaintiff Bonnie Jones will receive a $3,500 Incentive Payment in return for her efforts in initiating this action and prosecuting it to Settlement on behalf of herself and the Class. (Ex. 1 at ¶13.) A named plaintiff is an "essential ingredient of any class action, a service award is appropriate if it is necessary to induce an individual to participate in the suit." *Boyd v. Coventry Heath Care, Inc.*, 299 F.R.D. 451, 468 (D. Md. 2014) (awarding $5000 incentive awards to each of five class representatives) (citation omitted). When awarding incentive payments, the Court should consider "the actions taken to protect the class, the degree to which the class has benefited from those actions, and amount of time and effort the plaintiff expended in pursuing the litigation." *Id.* at 469. Here, Plaintiff was responsible for initiating this action and providing information and guidance to Plaintiff's Counsel in prosecuting the overtime claims on behalf of the Class. Considering her efforts, the requested Incentive Payment is justified.

## X. PLAINTIFF'S COUNSEL IS ENTITLED TO REASONABLE ATTORNEYS' FEES AND EXPENSES

Under the FLSA, plaintiffs are entitled to reasonable attorneys' fees spent in recovering unpaid wages. 29 U.S.C. § 216(b); *Smith v. Krispy Kreme Doughnut Corp.*, No. 1:05CV00187, 2007 WL 119157, at *1 (M.D.N.C. Jan. 10, 2007). "[T]he vast majority of courts of appeals . . . permit or direct district courts to use the percentage-fee method in common-fund case[s]." *Id.* (citing Manual for Complex Litigation § 14.121 (4th Ed. 2004). In applying the percentage-fee methodology, federal courts in the Fourth Circuit have approved percentages between 25% and 35% as fair and reasonable. *Muhammad v. Nat'l City Mortgage, Inc.*, No. 2:07-0423, 2008 WL 5377783 (S.D. W.Va. Dec. 19, 2008) (citing fees of one third, 25%, 30.6%, 35% and 32.5 %); *DeWitt v. Darlington County South Carolina*, 4:11–cv–00740–RBH, 2013 WL 6408371, at *9 (D.S.C. Dec. 6, 2013) (citing approved fees of one-third from New York, Iowa, and Maryland and up to 45% from New Jersey).

Here, the parties' Settlement allocates one-third of the Total Settlement to attorneys' fees and costs for all claims. (Ex. 1 at ¶¶4, 14.) Plaintiff's Counsel would typically be entitled to request an award of fees and expenses upon approval of the FLSA settlement, but here the FLSA settlement is contingent upon the approval of the Rule 23 class settlement. Plaintiff's Counsel will submit a single application for fees and costs with their motion for final approval of the Rule 23 settlement.

## XI. CONCLUSION

For the foregoing reasons set forth above, the parties respectfully request that the Court grant their Joint Motion for Preliminary Approval of Rule 23 Class Action and FLSA Collective Action Settlement, enter the proposed Order, set a hearing for final approval, and grant any other relief that the Court deems just and proper.

/s/ Benjamin R. Holland
Benjamin R. Holland, NCSB #28580
benjamin.holland@ogletree.com
Ogletree, Deakins, Nash, Smoak & Stewart P.C.
201 South College Street, Suite 2300
Telephone: (704) 342-2588
Facsimile: (704) 342-4379

*Attorney for Defendant*

/s/ Philip J. Gibbons, Jr.
Philip J. Gibbons, Jr., NCSB #50276
phil@gibbonsleis.com
Craig L. Leis, NCSB #48582
GIBBONS LEIS, PLLC
14045 Ballantyne Corporate Pl., Suite 325
Charlotte, NC 28277
Telephone: (704)-612-0038
Facsimile: (704) 612-0038

Ryan F. Stephen
rstephen@stephansouras.com
James B. Zouras
jzouras@stephanzouras.com
Andrew C. Ficzko
aficzko@stephanzouras.com
STEPHAN ZOURAS, LLP
100 North Riverside Plaza, Suite 2150
Chicago, IL 60606
Telephone: (312) 233-1550
Facsimile (312) 233-1560

*Attorneys for Plaintiff*

**CERTIFICATE OF SERVICE**

This is to certify that on March 24, 2019, the undersigned filed the foregoing using the Court's CM/ECF system which will send notification of such filing to the appropriate CM/ECF participants.

/s/ Philip J. Gibbons, Jr.
*Attorney for Plaintiff(s)*